UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**COREY MARQUEE ADAMS (#357624)**            **CIVIL ACTION**

**VERSUS**

**18-191-JWD-RLB**

**LOUISIANA DEPT. OF CORR., ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on April 22, 2019.

                                                 **RICHARD L. BOURGEOIS, JR.**
                                                 **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**COREY MARQUEE ADAMS (#357624)**                             **CIVIL ACTION**

**VERSUS**

                                                                                      **18-191-JWD-RLB**

**LOUISIANA DEPT. OF CORR., ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Motions to Dismiss filed on behalf of defendants Louisiana Department of Corrections, James Leblanc, Darrel Vannoy, Jerry Goodwin, Joseph Lamartiniere, Stephanie Lamartiniere, Jimmy Smith, Tim Delaney, Kevin Benjamin, Randy Lavespere, Trent Barton, Shirley Cooley, Tracy Falgout, Matthew Gamble, Melvin Warner, Lonnie Nail, Justin Worsham, Michael Strain, Jesse Bellamy, Mark Hunter, Roy Adams, Roger Young, Steve Hayden, River Kirby, Marcia Booker, Carol Gilcrease, Herman Holmes, and Joel Williams (R. Docs. 36, 66, and 85). Two Motions (R. Docs. 66 and 85) are opposed. *See* R. Docs. 78 and 88.

*Pro se* plaintiff, an inmate formerly confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 and the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") against numerous defendants complaining that his constitutional rights were violated due to the use of excessive force and deliberate indifference to his serious medical needs. As an initial matter, the Court notes that on April 3, 2019, the Court dismissed all of the plaintiff's claims, with prejudice, except the plaintiff's claim for deliberate indifference to his serious medical needs asserted against defendants S. Lamartiniere, Adams, Dr. Lavespere, Dr. Gamble, Bellamy and Smith, and the plaintiff's claim

for excessive force asserted against defendant Holmes, all occurring prior to March 1, 2017.[1] *See* R. Docs. 90 and 95.  As such, the Motion to Dismiss filed on behalf of defendants Louisinaa Department of Corrections, James Leblanc, Darrel Vannoy, Jerry Goodwin, Joseph Lamartiniere, Stephanie Lamartiniere, Jimmy Smith, Tim Delaney, Kevin Benjamin, Randy Lavespere, Trent Barton, Shirley Cooley, Tracy Falgout, Matthew Gamble, Melvin Warner, Lonnie Nail, Justin Worsham, Michael Strain, Jesse Bellamy, Mark Hunter, Roy Adams, and Roger Young (R. Doc. 36) is moot except with regards to defendants S. Lamartiniere, Smith, Dr. Lavespere, Dr. Gamble, Bellamy, and Adams.  The Motion to Dismiss filed on behalf of defendant Steve Hayden (R. Doc. 66) is moot in its entirety.  The Motion to Dismiss filed on behalf of defendants River Kirby, Marcia Booker, Carol Gilcrease, Herman Holmes, and Joel Williams (R. Doc. 85) is moot except with regards to defendant Holmes.

Turning to the claims not rendered moot by virtue of this Court's Ruling (R. Doc. 95), the moving defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's claim against them in their official capacities. In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.  *Id*. at 25.

---

[1] The plaintiff's claims against defendants Darbone, Diaz, Wright, Honeycutt, and Dr. Barkmeyer were dismissed, without prejudice, for failure to timely effect service upon them.  *See* R. Docs. 90 and 95.

Accordingly, the plaintiff's claims asserted against the defendants in their official capacities, for monetary damages, are subject to dismissal. In contrast, the plaintiff's claims for monetary damages asserted against the defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29. The plaintiff's claims for declaratory and injunctive relief asserted against the defendants in their official capacities also remain viable because such a claim is not treated as a claim against the state. *Will v. Michigan Department of State Police*, *supra*, 491 U.S. at 71 n.10. Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief.

Turning to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, the defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.' " *Id*. at 679.  "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted).  Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint as amended (R. Docs. 1, 6, 8, 31, and 69), the plaintiff alleges in short that on May 16, 2015 his upper body and head were shut in a cell door due to a mechanism dysfunction.  As a result of the incident, the plaintiff began to suffer from vertigo and seizures which caused him to fall furthering injuring his head, neck, and back.  The resultant unbearable pain causes the plaintiff to suffer from anxiety and depression resulting in acts of self-harm which include cutting of various body parts and banging of the head.

Despite numerous requests for treatment of his pain, the plaintiff has not been provided with any form of effective treatment for his pain.  On several occasions of self-harm, the plaintiff's resulting injuries were untreated or not promptly treated.  On other occasions, the plaintiff's threats of self-harm were ignored resulting in the plaintiff being placed on standard watch only and ending in acts of self-harm.  Additionally, the plaintiff has been written up for behaviors resulting from his mental illness and excessive force has been used against the plaintiff

for the same reason. In September of 2017, the plaintiff filed a "sensitive ARP" directly with the secretary of the Department of Corrections. The ARP was rejected in October of 2017 and the details of the plaintiff's grievance became known at the prison. The following month, the plaintiff was transferred to the David Wade Correctional Center ("DWCC") in retaliation for filing the "sensitive ARP."

At DWCC some of the plaintiff's property was lost and some was unfairly confiscated. The plaintiff's medical and mental health needs still remain untreated, and the plaintiff is subjected to unconstitutional conditions of confinement.

In response to the plaintiff's allegations, the defendants have asserted that that are entitled to qualified immunity in connection with the plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis, the Court finds that defendants' motions (R. Docs. 36 and 85) should be granted in part. Specifically, the Court concludes that the

plaintiff has failed to state a claim, against defendants S. Lamartiniere, Dr. Lavespere, Dr. Gamble, and Bellamy, upon which relief may be granted.

First, the Court finds that the plaintiff has failed to allege sufficient personal involvement on the part of defendants S. Lamartiniere and Dr. Lavespere in any alleged violation of the plaintiff's constitutional rights. In order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that the defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 F. App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

The plaintiff has made no allegations of personal involvement on the part of the moving defendants with regards to his medical care. Rather, the plaintiff complains that defendants S. Lamartiniere and Dr. Lavespere failed to respond to his grievances and informal complaints. Such allegations fails to state a claim upon which relief may be granted as the plaintiff is not

constitutionally entitled to an investigation into his administrative claims or informal complaints, or to a fair or favorable response thereto. *See Mahogany v. Miller*, 252 Fed. Appx. 593 (5th Cir. 2007). *See also Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (holding that an inmate "does not have a federally protected liberty interest" in having his administrative claims resolved to his satisfaction and that a claim "arising from the alleged failure to investigate his grievances is indisputably meritless").

Turning next to the plaintiff's exhausted[2] claims asserted against Dr. Gamble and Major Bellamy, in order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must allege that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble*, *supra*. Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints,

---

[2] The Court cannot consider the plaintiff's claims asserted against Dr. Gamble for events occurring after March 1, 2017, the date ARP LSP-2017-0472 was filed by the plaintiff, which was the only ARP containing exhausted claims against specified or identifiable persons. *See* R. Doc. 90.

intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle v. Gamble*, *supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993).

In the instant matter, the plaintiff alleges that near the end of 2015, the plaintiff was seen by Dr. Gamble and complained of increased neck, head, and back pain, acute vertigo/seizures, and the medical department's deliberate indifference to the same. The plaintiff requested that Dr. Gamble prescribe pain medication and order an MRI. The plaintiff further alleges that Dr. Gamble prescribed Ibuprofen and ordered an MRI, which was completed on April 1, 2016. As such, the plaintiff's allegations fail to show Dr. Gamble refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct evincing a wanton disregard for his serious medical needs.

As to Major Bellamy, the plaintiff alleges that on November 28, 2016 after he engaged in self-harm he was sprayed with a chemical agent and was not allowed to shower. When Col. Whitaker and defendant Major Bellamy arrived on the tier to respond to a disturbance, the plaintiff informed them of the same. After observing the plaintiff's wounds, Col. Whitaker had the plaintiff transported to the prison emergency room for treatment. The plaintiff's allegations make clear that his medical needs were attended to by Col. Whitaker, and the plaintiff does not allege that Col. Whitaker took control of the situation because defendant Major Bellamy refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct evincing a wanton disregard for his serious medical needs. As such, the plaintiff

has failed to state claim upon which relief may be granted against defendants Dr. Gamble and Major Bellamy.

Turning to the plaintiff's claims against defendants Smith and Adams, the Court finds that the defendants' Motion to Dismiss should be denied at this time. The plaintiff alleges that on January 20, 2017 another inmate broke the light fixture in cell six and chewed the lightbulb. When the inmate was returned to the same cell, he committed suicide. The plaintiff was informed shortly thereafter that he would be placed in that cell. The plaintiff informed Col. Wright, Capt. Honeycutt and defendant Smith that he would harm himself if forced to move to cell six. The plaintiff was moved to the cell despite his warning, and once his restraints were removed the plaintiff ran headfirst into the concrete wall. The plaintiff then attempted to cut himself using an exposed screw from the broken light fixture. The plaintiff was instructed to stop and was then escorted to the shower. Col. Wright, Capt. Honeycutt, and defendant Smith then told the plaintiff it was "out of their hands" and placed the plaintiff back in cell six. The plaintiff again told these officers that he would continue to harm himself. The plaintiff's warning was again ignored, and the plaintiff continuously cut his right and left forearms on the broken light fixture. Defendant Adams was notified and upon arrival at the unit, watched the plaintiff cut his arms and then told the plaintiff it was "out of his control" before leaving.

As such, the plaintiff alleges that defendants Smith and Adams were apprised of a substantial risk to the plaintiff's health and safety and did not respond reasonably to the danger of which they were made aware. At this time, the Court cannot conclude otherwise. Additional evidence, which cannot be considered when evaluating a Motion to Dismiss, would need to be presented.

Turning to the plaintiff's claim against defendant Holmes, a use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind."  *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986).  The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  *Wilkins v. Gaddy, supra*, 559 U.S. at 38.  Notwithstanding, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances.  In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response.  *Hudson v. McMillian, supra*, 503 U.S. at 7.

With regards to defendant Holmes the plaintiff alleges that on November 28, 2016, due to unbearable pain in his neck and back, he cut his abdomen 16 times and cut his right calf four times.  The plaintiff was moved to the shower and seen by EMTs.  Due to continued pain, he

repeatedly cut his right forearm with a piece of a razor while in the shower. Defendant Holmes ordered the plaintiff to stop and instructed the plaintiff to give him the razor. The plaintiff stopped and dropped the razor down the shower drain. Defendant Holmes then sprayed the plaintiff with a chemical agent and denied the plaintiff a shower. As a result, the plaintiff felt intense burning which caused him to sweat. The sweat entered the cuts on his abdomen and leg. The plaintiff also suffered blurred vision, choking, and gagging. Accepting the plaintiff's allegations as true, it appears that at the time the plaintiff was sprayed with the chemical agent there was no need for the application of such force. As such, the Motion to Dismiss filed on behalf of defendant Holmes should be denied.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, given the Court's recommendations to dismiss the majority of the plaintiff's federal claims, the Court further recommends that the exercise of supplemental jurisdiction be declined.

**RECOMMENDATION**

It is the recommendation of the Magistrate Judge that the Motion to Dismiss filed on behalf of remaining defendants S. Lamartiniere, Smith, Dr. Lavespere, Dr. Gamble, Bellamy, Adams, and other defendants previously dismissed (R. Doc. 36), be granted in part, dismissing the plaintiff's claims for monetary damages asserted against the defendants in their official capacities, and dismissing the plaintiff's claims in their entirety against defendants S.

Lamartiniere, Dr. Lavespere, Dr. Gamble and Bellamy with prejudice. It is further recommended that the Motion (R. Doc. 36) be denied as to the plaintiff's claims for deliberate indifference to his health and safety asserted against defendants Smith and Adams in their individual capacities, and in all other regards be denied as moot.

It is further recommended that the Motion to Dismiss filed on behalf of defendant Hayden (R. Doc. 66) be denied as moot.

It is further recommended that the Motion to Dismiss filed on behalf of remaining defendant Holmes and other defendants previously dismissed (R. Doc. 85) be granted in part as to the plaintiff's claims for monetary damages asserted against defendant Holmes in his official capacity. It is further recommended that the Motion (R. Doc. 85) be denied as to the plaintiff's claim for excessive force asserted against defendant Holmes, and in all other regards be denied as moot. It is further recommended that the Court decline the exercise of supplemental jurisdiction in connection with the plaintiff's potential state law claims, and this matter be referred back to magistrate judge for further proceedings herein.[3]

Signed in Baton Rouge, Louisiana, on April 22, 2019.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3] The previously issued stay of discovery (R. Doc. 58) will be lifted automatically upon the district judge's ruling on the motions subject to this report and recommendation.